(78 Misc. Rep. 385.)

### RAIT v. CARPENTER et al.

(Supreme Court, Appellate Term, First Department. December 6, 1912.)

1. BROKERS (§ 74*)—"FLOOR BROKER"—COMMISSIONS.

A broker, who bought and sold cotton on the floor of the Exchange, and, instead of making contracts in his own name, would "give up" to the person with whom he dealt the name of another broker, who would sign the contract, acted as "floor broker" for his principal, so that the principal must look to the broker whose name was "given up," and is liable to that broker for commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 62; Dec. Dig. § 74.*]

2. BROKERS (§ 40*)—RIGHT TO COMMISSION—NECESSITY OF EMPLOYMENT.

To recover his commission, a broker must show services performed for defendant at his request, or accepted under circumstances implying a promise to pay.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 38–40; Dec. Dig. § 40.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BROKERS (§ 40*)—RIGHT TO COMMISSION—IMPLIED CONTRACT.

Where a member of a Cotton Exchange, acting as floor broker, turned over to a brokerage firm his principal's business, which he controlled, the fact that a representative of such firm had prior thereto requested the business from the floor broker's principal justified the brokerage firm in assuming that the business was procured by their representative, and that the floor broker did not expect a commission thereon, and rebutted any implied promise on their part to pay such commission.

[Ed. Note.—For other cases. see Brokers, Cent. Dig. §§ 38–40; Dec. Dig. § 40.*]

4. EVIDENCE (§ 263*)—ADMISSIONS—ACKNOWLEDGMENT OF LIABILITY.

A payment by mistake for part of the services rendered by a floor broker in procuring the business of his principal for a brokerage firm was not conclusive as an admission of liability for all such services rendered, but was subject to explanation.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1022–1027; Dec. Dig. § 263.*]

Appeal from City Court of New York, Trial Term.

Action by David Rait against N. Leslie Carpenter and others. From judgment upon verdict for plaintiff, and an order denying new trial, defendants appeal. Reversed, and new trial granted.

Argued November term, 1912, before LEHMAN, PAGE, and HOTCHKISS, JJ.

John R. Abney, of New York City (Wm. St. J. Tozer, of New York City, of counsel), for appellants.

John Thomas Smith, of New York City, for respondent.

LEHMAN, J. The plaintiff sues for the reasonable value of services performed at the defendants' request in procuring for defendants the business of Latham, Alexander & Co. The complaint sets forth that the reasonable value of these services was the sum of $2,087.25, which sum was the amount due from the defendants pursuant to the custom of the Exchange. The complaint then sets forth that:

"There existed among members of the Exchange a custom that, for business received from a fellow member, the receiving member should allow and pay to said member $3 as the member's commissions and 75 cents as floor brokerage on each 100 bales of cotton bought or sold for customers purchased as aforesaid."

[1] At the trial, the plaintiff sought to prove his case by showing that he was a member of the Cotton Exchange, and that he bought and sold cotton for one Gaylord, doing business under the name of Latham, Alexander & Co. In these transactions he acted as "floor broker" for his principal; i. e., while he bought and sold cotton on the floor of the Exchange, he did not make the contracts in his own name, but, before the time arrived to sign the actual contract, he would "give up" to the person with whom he dealt the name of another broker, who would sign the contract. The second broker, who signed the contract, would then, under the rules of the Exchange, be the only person recognized by the other party as the person actually responsible for the contract, and he would also be the person

entitled to look to the "floor broker's" principal for commissions and for security. The plaintiff was permitted by Latham, Alexander & Co. to "give up" the names of any other brokers upon their order, and Latham, Alexander & Co. then became the principal of the second broker. On May 31st the plaintiff bought and· sold several hundred bales of cotton for future delivery, and "gave up" the name of Carpenter, Baggot & Co., who signed the actual contracts. Thereafter, for some months, he continued to "give up" the name of Carpenter, Baggot & Co. for large amounts of purchases and sales which he made for Latham, Alexander & Co. He had no previous conversation with these defendants, by which they authorized him to "give up" their name, or by which they agreed to pay him any commission for procuring for them this business.

It is not disputed that, under the rules of the Exchange, the plaintiff is entitled to the sum of 75 cents per 100 bales for acting as floor broker; but he claims that the defendants, by accepting the transactions in which he "gave up" their name, are also obligated, under a custom of the Exchange, to pay him the sum of $3 per 100 bales for procuring the business of Latham, Alexander & Co. for them. He testified that the custom of the Exchange is that:

"When a member obtains business for another member of the Exchange from a party who is not·a member of the Exchange, it is customary to allow the member obtaining the business a commission of $3 for buying and $3 for selling 100 bales of cotton."

At the trial, several other brokers of larger experience than the plaintiff denied that this custom exists, and claimed that the member procuring business and giving up another member's name was entitled to no payment, except by special agreement. Conceding, however, that the jury had a right to find that, where no special agreement is made, the member procuring the business is entitled to an allowance of $3 per 100 bales, I still think that the verdict of the jury must be reversed.

[2, 3] The plaintiff sues for services performed at the request of the defendants, and before he can recover· he must show that he actually performed services for them at their request, or that they accepted services rendered by him under circumstances that permit the law to raise the implication of a promise to pay. Ordinarily, the mere fact that he "gave up" the defendants' name on business which he controlled, and that they accepted these contracts, might perhaps raise an implied promise to pay for his services. No such promise, however, can be implied when the circumstances rebut any such implied promise, and, in my opinion, such circumstances clearly exist in this case.

The plaintiff, for the purpose of showing that he did actually control the business of Latham, Alexander & Co., produced as his witness Gaylord, the owner of that business, and Gaylord testified that, previous to May 31st, a man named Blakeney came to his office, and, stating that he was in the defendants' employ, asked him to assist him in getting business for the defendants. Gaylord stated that it was in plaintiff's discretion to give out their business, and he then

told Blakeney that he would ask plaintiff to give defendants some of their business. He further testified that he asked plaintiff thereafter to do so. It must be remembered that this conversation represents the inception of a practice of Rait's giving up defendants' name on purchases and sales made by him for Gaylord, doing business under the name of Latham, Alexander & Co., and that he never was directly authorized by the defendants to give up their name, though necessarily giving up the name of another broker involved the consent of that broker; for, by signing the contract, the second broker assumed a risk, and must, therefore, first approve the responsibility of the principal whose business he thereby secured. It was fair to assume, therefore, that, when plaintiff "gave up" the defendants' name, he was acting as a result of the conversation previously held between Blakeney and his principal. Under such circumstances, even if the plaintiff actually controlled the business of Gaylord, and in a sense procured it for the defendants, the defendants had a right to assume that the business was procured by Blakeney, and though they actually may have accepted plaintiff's services, they did so without knowledge that he had procured the business, and under circumstances that justified them in believing that these services were not rendered with the expectation that he would be paid the customary commission, and that therefore rebuts the presumption of any implied promise to pay.

[4] It is true that the evidence shows that in July the plaintiff rendered a bill to defendants, including an item of $96 for commissions for procuring this business during the preceding month, and that the defendants paid this bill. This payment is, however, merely an admission which the defendants had a right to explain, and when the plaintiff's whole evidence shows that the defendants were never obliged to pay him these commissions, and the defendants explain that the bill was paid by mistake, their explanation cannot be lightly disregarded.

It follows that the judgment must be reversed, and a new trial granted, with costs to appellants to abide the event. All concur.